UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

AL-JOHN NDOYI SAKASAMO,

        Plaintiff,

     v.                                     Case No. 25-cv-1396-bhl

BEAU MORLEY et al.,

        Defendants.

─────────────────────────────────────────────

## SCREENING ORDER

─────────────────────────────────────────────

      Plaintiff Al-John Ndoyi Sakasamo, who is currently confined at the Mendota Mental Health Institute and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On November 18, 2025, the Court screened the complaint and after concluding the complaint was deficient, gave Sakasamo the opportunity to file an amended complaint, which he did on December 15, 2025. The Court will screen the amended complaint, as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

      As explained in the original screening order, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

# ALLEGATIONS OF THE AMENDED COMPLAINT

Sakasamo asserts that in 2020, he was found not guilty by mental disease or defect. On November 18, 2020, he began serving a ten-year commitment to the Wisconsin Department of Health Services. Defendants Beau Morely, a probation officer with the Department of Corrections, Taylor Ryan, a consultant with the Department of Health Services, and Renee DeWitt, an agent with the Department of Health Services, comprised Sakasamo's conditional release team (the CR Team). Sakasamo explains that conditional release is the time he spends in the community as opposed to being detained. During his conditional release, the CR Team is responsible for Sakasamo's supervision, including connecting him with community resources such as psychological and psychiatric services. Additionally, Morely was responsible for deciding whether to detain Sakasamo if the CR Team believed there was just cause to revoke Sakasamo's conditional release.

According to Sakasamo, in April 2025, he was briefly detained at a jail after his scorned ex-boyfriend reported that Sakasamo's behavior was concerning. Shortly after his release, Sakasamo's mental health provider, Mary Stample, informed the Team that detaining Sakasamo in jail could trigger a manic episode. Sakasamo explains that he has been diagnosed with bipolar disorder and that manic episodes are characterized by erratic and often self-destructive behavior, elevated mood, and compromised thinking. Not long after, in late April or early May 2025, Sakasamo self-reported to the CR Team that he intended to stop taking medications that a provider in the jail had prescribed to him during his recent detainment. He explains that he and Stample had previously agreed to a trial run of no medications. Sakasamo asserts that, in response to his notice to the CR Team, Morely ordered that Sakasamo be detained at the Fond du Lac County Jail.

Sakasamo asserts that his mental health began to rapidly deteriorate after he was detained. He asserts that his mania was severe, and he would spend hours being as foolishly disruptive as possible, including kicking and banging on surfaces, screaming and singing at maximum volume, and overtly expressing love for male correctional officers. He states that it is difficult to express the extent to which his faculties were compromised. Sakasamo notes that, despite this rapid and significant deterioration, the CR Team repeatedly denied or ignored his requests to be seen by a psychiatrist or therapist. Specifically, Sakasamo asserts that Morely met with him only once to inform him that he would no longer be treated by Stample, but Morely did not give Sakasamo any information about a replacement provider. Additionally, Sakasamo asserts that it was Ryan's

responsibility to set him up with psychological and/or psychiatric services while he was detained, but she did no such thing and only informed Sakasamo that he would not be seen by a nurse practitioner at the jail. According to Sakasamo, Ryan ignored all of his phone calls and did not meet weekly with him as she was required to do. Sakasamo asserts that DeWitt also failed to connect him with the appropriate psychiatric services and moved forward with revocation. He states that she had the option of ordering him detained in a hospital rather than a jail, but she did not do so despite how bad his symptoms were and despite the jail having no onsite psychiatrist.

Sakasamo also asserts that Judge Tricia Walker did not exercise her authority to order that Sakasamo be detained in a hospital instead of a jail, despite expressing concerns about his mental state based on correspondence he was sending her while at the jail. He also asserts that she failed to timely appoint him a lawyer, which resulted in the revocation process being delayed. Finally, Sakasamo asserts that Sheriff Ryan Waldschmidt violated the Eighth Amendment because jail staff isolated him from other inmates to discipline him for his misconduct. Sakasamo explains that the deprivation of human contact and mental stimulation worsened his mental health condition.

## THE COURT'S ANALYSIS

Sakasamo asserts that Defendants were deliberately indifferent to his serious mental health needs when he was detained in a jail rather than a hospital and when his pleas for mental health treatment were denied or ignored. "The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citations omitted). To state a claim, a plaintiff must allege that "the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measures of life's necessities, creating an excessive risk to the inmate's health and safety," and that the defendant was deliberately indifferent to that risk. *Id.* (citations omitted). With this standard in mind, the Court will allow Sakasamo to proceed on a deliberate indifference claim against Morley, Ryan, and DeWitt based on allegations that, despite Stample's warning that jail could trigger a manic episode, they decided to detain Sakasamo in a jail rather than a hospital and that, after his mental health started to significantly decline, they maintained his placement at the jail and denied and/or ignored his requests for mental health treatment even though they knew the jail did not have adequate resources to address Sakasamo's needs.

Sakasamo does not, however, state a claim against Judge Walker based on allegations that she ordered he be detained at a jail rather than a hospital because judges are absolutely immune

3

Case 2:25-cv-01396-BHL    Filed 01/06/26    Page 3 of 4    Document 10

from civil liability in the performance of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978). Sakasamo also fails to state a claim against Sheriff Waldschmidt based on allegations that jail staff kept him separate from other inmates and failed to provide him with adequate mental health treatment. The doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Nothing in the complaint suggests that Sheriff Waldschmidt was aware of, let alone involved in, decisions regarding Sakasamo's discipline and treatment. His role as a supervisor, on its own, is not enough for Sakasamo to state a claim against him.

**IT IS THEREFORE ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Sakasamo's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Beau Morely, Taylor Ryan, and Renee DeWitt.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Beau Morely, Taylor Ryan, and Renee DeWitt shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that Sakasamo fails to state a claim against Sheriff Ryan Waldschmidt and Judge Tricia L. Walker, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on January 6, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge